UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 13-42 (DWF) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Ryan Timothy Solon, | |
| Defendant. | |

Ryan Timothy Solon, *pro se.*

Andrew S. Dunne, Craig R. Baune, Gregory G. Brooker, James S. Alexander, and LeeAnn K. Bell, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

**INTRODUCTION**

This matter is before the Court on Defendant Ryan Timothy Solon's ("Solon") *pro se* motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. No. 331 ("Motion").) The United States of America (the "Government") opposes Solon's

---

[1] The Court also received and considered Solon's additional documentation including the letters in support of his release from his parents and sister and his conditional admission to the MN Adult and Teen Challenge treatment program. (Doc. No. 331-1.)

Motion.[2]  (Doc. No. 126.)  For the reasons discussed below, the Court respectfully denies Thompson's Motion.

## BACKGROUND

On July 12, 2013, Solon pled guilty to one count of conspiracy to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Doc. No. 119; *see also* Doc. No. 1.)  On November 5, 2014, this Court sentenced him to 120 months' imprisonment to be followed by a 5-year term of supervised release.  (Doc. Nos. 270, 272.)

Solon, who is 42 years old, is currently incarcerated at Sandstone FCI in Sandstone, MN with an anticipated release date of August 22, 2023.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited Feb. 23, 2021). Sandstone FCI reports no active COVID-19 cases among its inmates and 6 among its staff, and 704 inmates and 47 staff who have recovered from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021).  Sadly, 1 inmate at the facility has died from COVID-19.  *Id.*

Solon, who is 42 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he suffers from sleep apnea.  (Motion at 1; *see also* Doc. No. 335-1 at 6-21 ("Medical Records").)  He also expresses concern about the number of COVID-19 cases in his facility, and the

---

[2]  Solon's response to the Government's opposition was due February 3, 2020. (Doc. No. 334.)  He did not submit one.

impact the virus has had on his access to drug treatment programming. (*Id.* at 1-2.) Solon asserts that compassionate release would allow him to participate in a drug treatment program and to care for his aging parents. (*Id.* at 2.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

3

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[3]  *Id.*

The record reflects that Solon requested compassionate release from the warden at Sandstone FCI on September 16, 2020 (Doc. No. 335-1 at 2) and that it was denied on September 26, 2020 (Doc. No. 333-1 at 9).  Solon appealed the denial; however, it too was denied on October 20, 2020.  (*Id.* at 8.)  Accordingly, the Court finds that his Motion is properly before it.

After a careful review of Solon's Motion and other documentation, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release.  According to the Centers for Disease Control and Prevention, sleep apnea is not a medical condition that makes him particularly vulnerable to severe infection from COVID-19.  *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Feb. 23, 2021).  Moreover, Solon's Medical Records indicate that his sleep apnea is in remission and that he has not used a CPAP machine in several years.  (Medical Records at 9.)

---

[3]   Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

4

The Court also recognizes Solon's concern about the number of COVID-19 cases in his facility. It is correct and truly unfortunate that a large number of inmates and staff at Sandstone FCI have been infected by the virus and that one inmate died. Notwithstanding, this Court agrees with others that a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020). It is promising though, that no inmate at the facility is currently positive for COVID-19, and that most individuals successfully recovered from COVID-19. The Court also notes that Sandstone FCI continues to employ measures to mitigate the spread of the virus, and that the BOP has currently administered over 52,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it.[4] Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021).

---

[4] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited Feb. 23, 2021). Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) The BOP periodically updates its Plan and is currently in Phase Nine. Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf*. (last visited Feb. 23, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021). Since March 2020, the BOP has transferred more than 21,000 inmates to home confinement. *Id.*

5

Finally, the Court recognizes and affirms Solon's strong desire to complete drug treatment and finds it a tragedy that important programming such as the residential drug abuse program cannot safely take place in prison settings at this time. Notwithstanding, the Court cannot overlook Solon's criminal history to conclude that releasing him at this time would adequately address the seriousness of the charges of Solon's conviction, promote respect for the law or provide a just punishment.[5]

## CONCLUSION

For the reasons set forth above, the Court finds that Solon fails to present extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Ryan Timothy Solon's *pro se* motion for compassionate release (Doc. No. [331]) is respectfully **DENIED**.

Date: February 24, 2021            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge

---

[5] While the Court finds that release is not appropriate, it reiterates its praise for Solon's commitment to rehabilitation and is confident that as vaccines become more widely available, drug treatment programming will resume as well.